# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| MODESTA LUNA BENCOMO, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br> v.<br><br>SENTRY CREDIT INC.,<br><br>    Defendant. | Case No.: 18-cv-1475<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Modesta Luna Bencomo is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff, debts allegedly incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the debt arose from an agreement to defer payment.

6. Defendant Sentry Credit, Inc. ("SCI") is a foreign business corporation with its principal offices located at 2809 Grand Avenue, Everett, Washington 98201.

7. SCI is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others and incurred for personal, family, or household purposes.

8. SCI is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

9. SCI is a "debt collector" as defined by 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

**FACTS**

10. On or about July 23, 2018, Nordstrom mailed an account statement to Plaintiff regarding an alleged debt, allegedly owed to TD Bank and associated with Plaintiff's "Nordstrom Credit Card" account with an account number ending in 1711. A copy of this account statement is attached to this complaint as Exhibit A.

11. The Nordstrom Credit Card account referenced in Exhibit A was used only for personal, family, or household purposes, including purchases of clothing and household goods from Nordstrom stores.

12. Exhibit A contains the following "PAYMENT INFORMATION":

**PAYMENT INFORMATION**

| | |
|---|---|
| New balance | $10,314.07 |
| Minimum payment due | $2,254.00 |
| Payment due date | August 18, 2018 |

Exhibit A.

13.     Exhibit A also contains a "PAYMENT SLIP," which states:

```
Account number:          XXXX XXXX XXXX 1711
Minimum payment due:            $2,254.00
Your new balance                $10,314.07
Payment due date:            August 18, 2018
```

Exhibit A.

14.     Exhibit A states that, July 23, 2018, Plaintiff's account ending in 1711 had a "New Balance" of $10,314.07, with a "Payment Due Date" of August 18, 2018, and a "Minimum Payment Due" of $2,254.00

15.     Exhibit A further states the following "INFORMATION ABOUT YOUR NORDSTROM ACCOUNT":

**INFORMATION ABOUT YOUR NORDSTROM ACCOUNT**

TTY Service is available for the deaf and hard of hearing: 1.800.934.3898

As used below, *you* and *your* refer to the customer and *we, our, us,* and *TD Bank* refer to TD Bank USA, N.A., a national bank with its main office located in Delaware, and its successors and assignees. Your credit card is issued and credit is extended by TD Bank.

Exhibit A.

16.     Exhibit A states that Plaintiff's Nordstrom credit account "is issued and credit is extended by TD Bank."

17.     On or about August 10, 2018 SCI mailed Plaintiff a debt collection letter regarding the same alleged debt, allegedly owed to TD Bank. A copy of this letter is attached to this complaint as Exhibit B.

18.     Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

3

19.     Upon information and belief, Exhibit B is a form debt collection letter, generated by computer, and used by SCI to attempt to collect alleged debts.

20.     Exhibit B was the first letter that SCI sent to Plaintiff with respect to Plaintiff's alleged TD Bank debt.

21.     Exhibit B contains the validation notice that the FDCPA, 15 U.S.C. § 1692g, requires that debt collectors send debtors along with their initial communications:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume the debt is valid. If you notify this office in writing within 30 days from receiving this notice, that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit B.

22.     The header in Exhibit B also states:

> Current Creditor: Nordstrom Inc.
> Account #: Ending in 1711
> Agency Account #: ▇▇▇▇500
>
> Principal: $8,773.44
> Interest: $1,540.63
> Total Balance: $10,314.07

Exhibit B.

23.     Exhibit B also contains a payment remittance slip, which contains the following:

| Regarding |||
|---|---|---|
| Current Creditor: Nordstrom Inc. |||
| Account # | Balance | Amount Enclosed |
| ▇▇▇1500 | $10314.07 | $ |

Exhibit B.

*Improper Acceleration of the Debt*

24.     Exhibit B, mailed on August 10, 2018, during the billing cycle covered by Exhibit A and more than a week before the "Payment Due Date" stated in Exhibit A, states the "Balance" and "Total Balance" is $10,314.07, but does not state that only a portion of that balance, the minimum payment, was due as of August 10, 2018.

4

25. Exhibit B, thus, represents that the debt had been accelerated and the full balance was due when Exhibit B was mailed.

26. SCI's representation in Exhibit B that Plaintiff's account ending in 1711 had a "Total Balance" of $10,314.07 is false, deceptive, misleading, and unconscionable.

27. According to Exhibit A, as of August 10, 2018, when SCI mailed Exhibit B, Plaintiff's account ending in 1711 had a "Minimum Payment Due" of $2,254.00, and a "Payment Due Date" of August 18, 2018. Exhibit A.

28. The unsophisticated consumer cannot determine whether the debt had been accelerated or not, or how much debt is actually due as of the date of Exhibit B. Exhibit B states that the "Total Balance" is $10,314.07 without stating an amount "due" while Exhibit A seeks only a minimum payment of $2,254.00. *See Machnik v. RSI Enters.*, 2017 U.S. Dist. LEXIS 160772, at *6 (E.D. Wis. Sept. 29, 2017) ("In the context of a debt, 'owing' an amount is distinguishable from the amount 'due.' ").

29. Although only $2,254.00 was actually due on August 10, 2018, Exhibit B attempts to collects $10,314.07 without disclosing that only a portion of the "Total Balance" is actually due. *See Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 947-48 (7th Cir. 2004) (debt collector misleads consumer by stating a "current balance" without disclosing that portion fo that balance "might not yet be due, let alone overdue.").

30. SCI and TD Bank both represented the amount of the debt in a way that was confusing to the unsophisticated consumer and/or misrepresented the amount of the debt.

31. Upon information and belief, SCI and TD Bank work in a scripted process to collect TD Bank debts such as Plaintiff's.

5

32. Upon information and belief, SCI is fully aware of the contents and representations in Exhibit A,

33. Upon information and belief, SCI is fully aware that its letter is sent during account billing cycles wherein TD Bank has sent a statement to consumers seeking a "minimum payment" and not representing that the entire balance is due.

34. Further, Exhibit B also contains the following:

> Our client Nordstrom Inc. is willing to offer you a settlement and repayment terms on your outstanding balance at this time. We would like to extend the following options to you for repaying your account balance:
>
> **Option 1:** Settle your account for a lump-sum payoff of $8,251.26. That is a reduction of 20% on your outstanding account balance.
>
> **Option 2:** Lower your payment amount and settle your account in three payments of $3,094.22. This option is a reduction of $1,031.41 off of your outstanding balance and
>
> **Option 3:** Call today for flexible repayment terms.

Exhibit B.

35. "Option 3" offers the consumer the opportunity to "call today for flexible repayment terms."

36. Because Exhibit B does not disclose the amount actually due, the instruction in Exhibit B that the consumer should "call today for flexible repayment terms" is false, deceptive, and misleading to the unsophisticated consumer because it contradicts, overshadows, and confuses the debt validation notice and encourages the consumer to forego her verification rights by communicating disputes about what portion of the balance was actually due orally rather than in writing:

15 U.S.C. § 1692g(a)(4) states:

(a) Notice of debt; contents

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
> …

6

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

37. To trigger verification rights, the debtor must provide the debt collector with written notification that there is a dispute. 15 U.S.C. § 1692g(a)(4); *see McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743 (N.D. Ill. July 8, 2003) ("If the debtor gives only *oral* notification of the dispute, the FDCPA imposes no requirement on the debt collector to obtain verification of the debt.") (citing *Fasten v. Zager*, 49 F. Supp. 2d 144, 149 (E.D.N.Y. May 20, 1999)); *see also, Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1273-74 (11th Cir. 2016).

38. Upon receiving a *written* dispute from the consumer within the 30-day debt validation period, the FDCPA requires the debt collector to contact the creditor and obtain verification of the debt before conducting any further collection efforts. 15 U.S.C. § 1692g(b):

> (b) Disputed debts
>
> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

39. Disputing a portion of the balance as not yet due is one of the most common reasons a consumer would dispute a debt under the FDCPA, and is specifically addressed as one

7

reason the consumer may dispute a debt. 15 U.S.C. § 1692g(a)(4) ("if the consumer notifies the debt collector in writing within the thirty-day period that the debt, *or any portion thereof*, is disputed . . ."); *see also, e.g., Chuway*, 362 F.3d at 948; *Machnik*, 2017 U.S. Dist. LEXIS 160772, at *6.

40. A request that the debt collector honor the "flexible payment terms" as stated by the creditor is in the nature of disputes under the FDCPA. *See Gruber v. Creditors' Prot. Serv.*, 742 F.3d 271, 274 (7th Cir. 2014) (request to verify an account is a dispute, because "unsophisticated consumers cannot be expected to assert their rights in legally precise phrases.")

41. Exhibit B confusingly directs the debtor to notify the debt collector about disputes over "payment terms" without informing the consumer that these disputes must be communicated in writing in order to trigger verification. *See Osborn v. Ekpsz, LLC*, 821 F. Supp. 2d 859, 868, 870 (S.D. Tex. Sept. 26, 2011) (collecting cases and concluding that "[e]very district court to consider the issue has held that a debt collector violates §1692g(a) by failing to inform consumers that requests under subsections(a)(4) and (a)(5) must be made in writing."); *see also, McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743-44 (N.D. Ill. July 8, 2003) (omitting the words "in writing" from the validation notice conflicted with and overshadowed the consumer's statutory right to trigger verification); *Chandler v. Eichel*, 2017 U.S. Dist. LEXIS 156168, at *9 (S.D. Ind. Sept. 25, 2017); *Crafton v. Law Firm of Levine*, 957 F.Supp.2d 992, 998 (E.D. Wis. July 9, 2013); *Bicking v. Law Offices of Rubenstein & Cogan*, 783 F.Supp.2d 841, 845 (E.D. Va. May 5, 2011); *Welker v. Law Office of Daniel J. Horowitz*, 699 F.Supp.2d 1164, 1170 (S.D. Cal. 2010); *Beasley v. Sessoms & Rogers, P.A.*, 2010 U.S. Dist. LEXIS 52010 (E.D. N.C. Mar. 1, 2010); *Nero v. Law Office of Sam Streeter, P.L.L.C.*, 655 F.Supp.2d 200, 206 (E.D.N.Y. Sept. 10, 2009); *Chan v. N. Am. Collectors, Inc.*, 2006 U.S. Dist. LEXIS 13353, at

*16 (N.D. Cal. Mar. 24, 2006); *Grief v. Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 217 F.Supp.2d 336, 340 (E.D.N.Y. Aug. 19, 2002); *Carroll v. United Compucred Collections*, 2002 U.S. Dist. LEXIS 25032, at *28 (M.D. Tenn. Nov. 15 2002); *Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 726 (D. Conn. Oct. 2, 1990).

42. The instruction, which is offset and easily read, would confuse and mislead consumers who wish to dispute debts to believe that a debtor who disputes her debt orally is entitled to the same protections as if she had communicated her dispute in writing, when she is not so entitled. *See Camacho v. Bridgeport Fin., Inc.*, 430 F.3d 1078, 1082 (9th Cir. 2005). The overshadowing effect is compounded because SCI states the balance without stating a minimum payment, and directs consumers to telephone SCI with questions about "flexible payment terms" --- for example, payment of the minimum payment due rather than the entire balance. *See e.g., Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 726 (D. Conn. Oct. 2, 1990) ("The invitation to telephone unaccompanied by any warning that the notice must be in writing to be effective obscures the dispute validation notice required by 15 U.S.C. § 1692g."); *see also, Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 629 (7th Cir. 2009) ("Confusing language in a dunning letter can have an intimidating effect by making the receipient feel that he is in over his head and had better pay up rather than question the demand for payment."); *see also Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, LLC*, 214 F.3d 872, 875 (7th Cir. 2000) ("to authorize debt collectors to comply orally would be just an invitation to the sort of fraudulent and coercive tactics in debt collection that the Act aimed (rightly or wrongly) to put an end to.").

43. Plaintiff was misled, deceived, and confused by <u>Exhibits A & B</u>.
9

44. The unsophisticated consumer would be misled, deceived, and confused by Exhibits A & B.

45. Plaintiff had to spend time and money investigating Exhibits A & B and the consequences of any potential responses to Exhibits A & B.

### *The FDCPA*

46. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("Spuhler I") ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l& Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey*

*Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lanev. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see alsoMogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)).For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

47. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

48. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

49. 15 U.S.C. § 1692e(2)(A) specifically prohibits the false representation of "the character, amount, or legal status of any debt."

50. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

51. 15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

52. 15 U.S.C. § 1692f(1) specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

53. 15 U.S.C. § 1692g states, in part:

(a) **Notice of debt; contents**

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

12

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector[.]

. . .

(b) Disputed Debts

. . .

Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

54. 15 U.S.C. § 1692g(a)(1) requires that, within five days of the initial communication with a consumer, debt collectors provide written notice containing "the amount of the debt," which is "the total amount due—interest and other charges as well as principal—*on the day the letter was sent*." *Miller, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000) (emphasis added).

### *The WCA*

55. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

56. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v.

13

*Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

57. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

58. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

59. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

60. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

61. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

62. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

63. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

64. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## **COUNT I – FDCPA**

65. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

66. Prior to sending Exhibit B, SCI was aware that TD Bank had sent Plaintiff an account statement stating Plaintiff's account had a "Minimum Payment Due" of $2,254.00, and a "Payment Due Date" of August 18, 2018.

67. SCI represented to Plaintiff that Plaintiff's TD Bank account had been accelerated by seeking to collect the entire balance and not just the amount actually due.

68. SCI misrepresented the amount, character, and legal status of the debt it was collecting and attempted to collect portions of the account that were not yet due. *See, Chuway*, 362 F.3d at 948.

69. SCI advises the consumer to call about "flexible payment terms."

15

70. SCI violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692f, 1692f(1), and 1692g(a)(1), 1692g(a)(3), 1692g(a)(4), and 1692g(b).

## COUNT II – WCA

71. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

72. In Exhibit A, TD Bank represented to Plaintiff that her account had a "Minimum Payment Due" of $2,254.00, and a "Payment Due Date" of August 18, 2018.

73. Nonetheless, TD Bank contracted with SCI to send Exhibit B, which represented that the whole of Plaintiff's account was past due on August 10, 2018 and attempted to collect the entire balance as though it had been properly accelerated.

74. In fact, when SCI sent Exhibit B, SCI knew that TD Bank had recently sent Plaintiff an account statement representing that her TD Bank debt had not been accelerated.

75. Defendants violated Wis. Stat. §§ 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

76. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin, (b) who were sent an account statement in the form of Exhibit A, (c) and subsequently were sent a debt collection letter in the form of Exhibit B, (d) seeking to collect a debt for personal, family, or household purposes, (e) between September 20, 2017 and September 20, 2018, inclusive, (e) that was not returned by the postal service.

77. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

78. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members.

The predominant common question is whether Defendants complied with the FDCPA and/or the WCA.

79. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

80. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

81. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

82. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: September 20, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fructher (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000

(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com

18